Thank you, Your Honor. May it please the Court, I'm Don Springmeyer, representing the Pyramid Lake Paiute Tribe. And we have done a little bit of background work with counsel for the cross-appellant in the 5747 Orgich case to try to simplify how we present this to the Court. And that will result in me arguing for jurisdiction and everyone else arguing against jurisdiction, and we're eliminating the cross-appeal issue by the following statement by me, which is that the Tribe did not protest the applications of TRCC, which is the cross-appellant in this case, and did not appear at the hearing on those applications, and did not present evidence with respect to the facts presented in support of the TRCC applications. So that one, in other words, is not now before us? That's the purport of your consent? Yes. The problem is that the ruling sweeps a whole bunch of chickens into the henhouse, and so all we are permitted to do is appeal the ruling, not portions of it. And that's how we end up in this situation. Okay. But that sorts it out a little bit, thank you. So the way we are proceeding is my argument attacking the refusal to take jurisdiction and everyone else supporting it. So the centerpiece of both of these questions really is Judge George ruling that there's no jurisdiction. Exactly correct, yes. Now, there are slight differences in the phraseology of both what the State Engineer says in the Ordich ruling and what he says in the Carson River, the Alpine Decree ruling. And there are slight differences in what Judge George says in his orders in each case. So I'll start with the Ordich, since that's the case you called first. And I would urge the Court that we have two levels of legal error here. And they are simple but sweeping and both absolutely wrong. And if they stand, it creates a terrible precedent for the protection of the surface water right holders on both the Truckee River under the Ordich Decree and the Carson River under the Alpine Decree. And as this Court knows, because I believe all three judges have been involved in appeals relating to the continuing jurisdiction of the decree courts, I think going back as far, Judge Hall, as 1989, and both Judge Fletcher and Judge Pez, I think on the Alpine Decree as well as the Ordich Decree in the 2000 vintage, the continuing and exclusive jurisdiction of the decree courts is required to enforce and protect the rights it establishes in its decrees. And the key problem here is that the state engineer, turning to Ruling 5747, not only ignores but actively refuses to follow the clear and binding precedent of the Nevada Supreme Court and the U.S. Supreme Court as well as the rulings of his predecessors. And he says, and I quote from the ruling, any groundwater that may discharge to the Truckee River is not part of the surface water decreed. Now, I know that passage. What page are you on? I just want to make sure I'm following. That is page 27 of the ruling, Your Honor. And that is just wrong. And the state engineer makes... But that's not the basis. I mean, that's not the basis for your assertion that the federal court should have taken jurisdiction. Well, as I say, it's... If the state engineer's understanding of Nevada law is incorrect, why isn't that correctable through the Nevada state courts? Because the assertion of the tribe is that it's federally decreed surface water rights are harmed by that legal... No, no, no. You just read us a passage. Yes. And you said, and part of that, or right before that, you said that the state engineer did not follow Nevada law or the rulings of his prior state engineers or the Nevada Supreme Court. And his assessment with regard to that passage you just read. And my only question to you is, why isn't that correctable through the state? If he made a legal error, why isn't that correctable through the state court system? I also said the United States Supreme Court, which is the Capert decision. Yes. And the key issue for the tribe is that a legal error which impacts its federally decreed water rights should be correctable by the federal court. Well, let me ask you this. In the jurisprudence of the Nevada courts, do they recognize that allocation, let's say since we're dealing with groundwater here or even surface, unallocated surface water? I wouldn't... Do they acknowledge in their jurisprudence that to the extent any such allocations by Nevada, that they have to take account of how those allocations might affect federally, allocations under the federal decrees? I believe the Griffin case stands for exactly that proposition. The Nevada Supreme Court saying that groundwater appropriations may not diminish federally decreed surface water, but that is an appropriate precedent for the state engineer to act upon and an appropriate precedent for the federal court to use in enforcing its jurisdiction over those very federally decreed surface rights. Well, you know, you're... What is the law? You're... This is all becoming intertwined. It is, Your Honor. Now, one of the things that troubled the district court was that there has been a pretty fine line. The federal decrees relate to surface water, all allocations with the surface water of the pertinent rivers that we're talking about. For many and all sources, the decree says. And the state has dealt with groundwater, an unallocated surface water. Yes, but it is the harm claimed by the state granting a groundwater right if that harm injures a federally decreed surface water right. That is the first job won of the federal district court who entered the decree to protect. Okay. Now, you don't actually allege here that these new groundwater allocations in the Oro Ditch situation actually impair the rights that have been allocated under the decree. We do. Well, no, you say they could potentially. No, Your Honor. Well, that's what I read in your brief. Well, that is because we are here on jurisdiction only. If we go back, as I hope, and go into the merits at some point, there is specific expert witness testimony in the state engineer's record on appeal in which the expert witness for the tribe says these will impair the flow in the river which will harm the lake and the fish and the rights of the tribe. Let me follow along with the line of Judge Pius's questions. Assume for the purposes of my question that I agree with your position that to the degree that groundwater allocations diminish the decreed rights of the tribe, which they have coming out of the Truckee River, the most senior rights coming out of it, to the degree that groundwater allocations diminish those rights, that I think the federal court has jurisdiction to protect the tribe against that diminution. Okay. Okay. How do we write the jurisdictional holding so that we don't get every darn groundwater allocation decision coming into the federal court on appeal because of some bare possibility that there might be an effect in a particularly dry year or maybe just maybe the state engineer got it a little bit wrong? I mean, how do we keep only the question in front of the district judge where there is a plausible or serious question of diminution of the decreed rights and we keep all the other cases in state court because there's really no serious question about it? Write the opinion that says that. What are the words? You attribute much too much skill to me, Your Honor. If we agree with you, we're going to have to write something like that. I hope so. And the problem is that the statements by both the district court and the state engineer are so sweeping that they cover... I understand that too. So I'm asking you, how would you state it? I would state it first to say that the federal district decree court has jurisdiction to look at a claim that there has been a harm to the federally decreed surface water rights that it protects. And if the state engineer also is instructed to follow the law and recognize the impact of groundwater appropriations on surface water rights, then we have two levels of protection. First, the state engineer is instructed to follow the law. If he then makes factual determinations in aid of that correct legal conclusion, those are entitled to the extraordinary deference of the administrative agency on review. All of that protects the federal district court and the Ninth Circuit from dealing with nuisance issues in this respect. If you, the Ninth Circuit, only go to level one, that being the federal court has jurisdiction to look at claims of harm to the surface water rights it decreed, that still leaves behind it the issue of the state engineer following the law. If you deal with both, I would suggest that opinion would constrain the circumstances under which there would be the tidal wave of litigation created. That all sounds terrific. Now write the opinion for me. We're now instructing the district court, this is what a case looks like when you have jurisdictional over it. This is what a case looks like when you don't have jurisdictional over it. And a jurisdictional determination in a good world, there's no such thing as an ideal world, but in a good world is the jurisdictional determination can be made early on without having spent three weeks of trial in the federal district court. Yes, Your Honor. So what do we say is the test as to whether or not there's jurisdiction when the tribe claims that the groundwater allocation will have a detrimental effect on their decreed right, might have? I mean, what do we say? You could say that is there substantial evidence in the record which supports the claim of harm to the federally decreed surface water rights? If the state engineer is applying the correct rule of law, I should not grant an application where there is harm, and the state engineer has a record and there's findings and evidence, and a protestant, in this case the tribe, then appeals that result to the federal district court and says the state engineer is wrong, either he applied the law not like the Ninth Circuit told him to when this case came back the first time, or there are clear and erroneous findings of fact that go contrary to the evidence, then the federal district court has a basis on which to exercise jurisdiction. But to say I will not look at anything if the application was for groundwater is the worst possible result. Okay. Now, that one may be the best we can do, but under the test you just proposed, the district judge is going to have to do a fair amount of work as to whether or not there's substantial evidence. You can't just read the complaint and say there is or there isn't, because the complaint is going to say there's no substantial evidence. It will, Your Honor. There are unavoidable burdens of being the decree court with continuing jurisdiction. I can't tell you that it's so simple that it's a throwaway. Well, let me, can I ask you just an informational question, I guess I'd call this? Yes. So in an abundance of caution, the tribe did file a petition for review in the local county court. Yes, Washoe County Court, Your Honor. Yes, and what ever happened to that case? It has been stayed pending the outcome of this appeal. And were the state engineer's decisions on the new allocations, were they also stayed? They were stayed as a result of a request by TRCC and the posting of a bond by TRCC. Everything is just in? In a holding, yes. A holding pen. Correct. Okay. Why don't we hear from the other side, and then we'll give you a chance to respond. Thank you. On my understanding of the order in which you would like to proceed, I think we've got Mr. Waltz first. May it please the court, I'm Michael Waltz, Senior Deputy Attorney General for the State of Nevada, appearing today on behalf of the Nevada State Engineer, Tracy Taylor. Is Tracy, is that a man's name or a woman's name?  I would also like to note for the record that Mr. Michael Goleta and Gary Kvistat, counsel for the town of Minden, who filed an amicus brief in this case, are also in the courtroom today. Okay. I will take approximately five minutes of time and will leave the rest to counsel. And I believe that Mr. Colvett will be arguing first, followed by Mr. Robertson. This court has previously held that the appellate procedures of NRS 533-450 are to be followed in both the Alpine and the Oradich cases. Those decrees do not provide for any other procedural mechanism for appeal of an administrative decision of the state engineer. Those state statutes don't really deal with federal court jurisdiction. In this case, it does, Your Honor. The case here arises as a matter of state law. This decree is an unusual creature. It was brought in federal court, but it's state law that governs the water rights as to specific, and this court has held as to specific procedures of the water code. Those also govern. And this is one of those specific procedures. Well, you're talking about jurisdiction. You're talking about the power of the federal court to act. How can the state statute limit or expand federal court jurisdiction? I think looking at your recent decisions, in 2004, the recent Oradich decision, 391F3rd. In that case, what was at issue was a federal rule of civil procedure versus a specific procedural component. The rules of civil procedure are different than federal court jurisdiction. That's not the power to act. It still must be found within the water law. This is an administrative decision. One of your arguments is that the state law forecloses federal court jurisdiction. There are two possible sources for jurisdiction in this case. Well, no. I'm just answering my question. My question, again, is one of your contentions that the state statute you just gave us, that that restricts federal court jurisdiction. The power, yes. The power to appeal a decision of the state engineer has to be found within the limitations of the water code, which have been found to apply. That's a different question. That's a different issue. You said the power to where you direct your appeal. My question, again, is, is it your contention that the state statute restricts the power of the federal court to act? Well, obviously, for purposes of determining jurisdiction, no. That's why we're here, Your Honor. As to getting to the merits of this case, yes, it has to be either found within the decree or it has to be found within the water code. So why doesn't the federal court here that approved these decrees have the power, have the authority, to protect the rights that flow from those decrees? The decrees themselves do not identify any source of appellate jurisdiction other than the water code. And so we're left with the task of interpreting that provision. Secondly, the jurisdiction that the federal courts took in adjudicating these river systems is limited to the rights that were specifically identified. Your Honor, I may be able to short circuit this. I'm hoping. I'm not sure I see a conflict between federal law governing the jurisdiction of the federal court and the Nevada statute. I'll just read you the Nevada statute, which I'm sure you know by heart. Any person feeling himself aggrieved by any order or decision of the state engineer, dot, dot, dot, may institute. But on stream systems where a decree of court has been entered, the action must be initiated in the court that entered the decree. Well, if we have someone who feels himself to be aggrieved by the decision of the state engineer and the aggrieving is, at least as felt by the person coming into court, says this is in conflict with the decree. As I read this, you've got to come into the court that entered the decree. I think before you're in federal court to the degree that there's a plausible allegation that what the state engineer did is in conflict with the decree. I don't think that that is a correct reading of the statute. That statute deals with two issues. One, appealability. And if a right relates to the administration of a determined or a permitted right, which is what those sections refer to as Nevada's permitting system, then it may be appealed. The next section then goes on and states where it may be appealed to. If it is a decreed right, then it goes to the decree court. If it is a permitted right, it goes to the state district court of the county where the matters affected are located. That's a clear demarcation in the code. And what's at issue here that the tribe is trying to protect? Is it not a decree right? I think the district court was correct in concluding that you have to look at the right that the state engineer was addressing as part of his administrative process. Well, but wait a minute. It seems to me that the state engineer might have been making a mistake. I'll get to that in a moment. But what the tribe is saying is we have two senior water rights under the decree coming out of the Truckee River. And the tribe is saying the allocation of this groundwater to other people interferes with our decree rights. Now, that may or may not be true on facts, but that's what they're saying. That is what they're saying. Why, then, doesn't that come into the decree right court to figure out whether the decree has, in fact, been interfered with? I think we have to draw a distinction between appellate jurisdiction and original jurisdiction in this instance. I don't think the state engineer is taking the position that a decree court doesn't have some authority to protect the rights that are adjudicated. And courts have done that. But appellate jurisdiction is laid out in the code, and it makes that distinction. Now, the reasons for doing so, I think, are pretty clear here. As the court has already noted, where does this stop and which court is going to have jurisdiction? Is it a mere allegation that creates jurisdiction? If that's the case, we have a completely unworkable standard. And, in fact, the tribe's position in this case leaves us with exactly that. Well, I may not be able to sort of get you to help me reconcile. It may be that we just retreat to what I think has to be right, that Nevada is incapable, by statute, of taking away jurisdiction from a federal court that would otherwise flow from the Orr-Ditch decree. I mean, Nevada can't pass a statute that says the federal court cannot have jurisdiction over any rights arising out of the Orr-Ditch decree. That's simply impossible. So to the degree that the Nevada state statute conflicts with the jurisdiction that inescapably must be exercised, implemented through Orr-Ditch decree, I would put the Nevada statute to one side. Now, again, I think that would arise from the context. We have to do a lot of things, I think, to get to that point, and those have not been done here, Your Honor. Okay. But I want to pass on to another question. And you may or may not want to address it because addressing it would assume that we have jurisdiction. Your adversary started out with a quotation from the state engineer's decision that says, the Orr-Ditch decree has nothing to do with groundwater, and any groundwater allocation does not, by definition, interfere with any Orr-Ditch decree rights. Is that a proper statement of the law? It perhaps overly generalizes it, but yes. Since 1939, the Nevada state engineer has adjudicated groundwater and surface water separately. The Griffin decision, which has been cited by opposing counsel, is very instructive in this case. If we look at the actual facts of that case, it's almost identical to the case that we have at hand. In that case, you had applications to appropriate groundwater in a groundwater basin that was adjacent to and dominated by a federally decreed river system. Now, in that case, the one differing fact is that the state engineer denied those applications, and they were appealed to state court. So if we accept the tribe's argument that the federal court has... Let me just read you the sentence, and you can tell me what part of it you agree or don't agree. The state engineer writes, The state engineer finds that any groundwater that may discharge to the Truckee River is not part of the surface water decreed to Protestant PLPT pursuant Orr-Ditch decree or the unappropriated surface water of the Truckee River granted to the PLPT. And the state engineer's ruling, da-da-da-da-da. Now, as I read that, it says that any groundwater coming into the Truckee River is not controlled by the decree. That's how I read that sentence. That is the state engineer's statement. Is that right or wrong as a matter of Nevada law? That's correct, and looking at the Griffin decision... Now, does that mean, then, that... I'm not saying that happened in this case. Does that mean, then, that the state engineer can allocate enormous amounts of groundwater such that, in fact, the senior rights of the tribe under number one and two are eliminated? No, and, in fact, that's what he... And the Griffin decision is the example of that. Well, then, this sentence seems to be wrong. You have to look at the Griffin decision factually and see what's going on. The state engineer had granted numerous rights in that groundwater basin, reached the application where it would exceed the perennial yield of the basin. And that's the mechanism that all groundwater basins... by which all groundwater basins are managed. There are different measurements of that based on the unique aspects of the basin, but that is the mechanism. In that decision, the state engineer had granted numerous applications, got to that point and said, no, now we're in danger of pulling water out of the river, water that belongs to the decree. We're going to deny it. And he was affirmed in that decision. The engineer is saying, whether the words say that really or not, you would construe the engineer as saying that, to the degree that groundwater allocations diminish decreed rights, I don't have the power to make those groundwater allocations. Right, but there is a dispute, a significant one, as to what rights belong to the river. And that's the distinction we have here. In addition, the state engineer's regulations are very careful, and his rulings are very careful to make sure that there is no risk of pulling water from the river. There are setback requirements. There are lining requirements. These are all there to recognize the danger of interfering with those rights. However, the state, as I said, since 1939, it is implicitly recognized by the Nevada Supreme Court in the Griffin decision, allocates the perennial yield of those basins to be appropriated through the groundwater system. Let me ask you another question, because I know the time is running, and I'm not exactly sure to whom among you to address this question. I assume all of you have an interest in the answer to this question. It seems to me intuitively correct, but I've not made my mind on the question, but it seems to me intuitively correct that if a senior water right holder under the Ordnance Decree, of which the tribe is one, has a right to a certain amount of water, and it's senior to all the other rights in the river, and if allocation of groundwater so diminishes the flow in the river because of water that otherwise would have come in through the groundwater and the seepage and so on, that those senior rights can no longer be exercised to the extent of the allocation and the right, it seems to me that the federal court has jurisdiction to determine whether or not that's an appropriate allocation of groundwater. Do you agree or do you disagree? No, I think under that factual circumstance, it's a matter of original jurisdiction perhaps, yes, if those facts indeed showed that. The original jurisdiction? What do you mean? Or do you mean appeal? The jurisdiction for the court to act without any kind of administrative action by the state engineer. You mean like some sort of complaint for an injunction against the states for enjoying those allocations? That is a possibility, Your Honor. Yes, I don't think we've ever seen that factual scenario in Nevada, and the state engineer has been very careful, but yes. If the federal court has jurisdiction to protect the senior water rights in that sense, why wouldn't it make more sense to allow that to come up as a straight appeal assuming that there's a plausible allegation that that's going on? Frivolous cases, you know, the last thing we want is to be sending cases into the federal courts that really don't belong there and there's no plausible or legitimate ground to think that in fact the senior water rights have been interfered with. Assuming that there is, and I'm fudging the words here, assuming there's good reason to believe that the groundwater allocation in fact interferes with the senior water rights in the river held by the tribe or some other senior right holder, why isn't it more efficient simply to appeal the allocation instead of requiring the instigation of an original suit? There are several points I think that have to be made in regards to that. First of all, it violates the concept of exclusive jurisdiction. The federal district courts have never taken jurisdiction as an original matter over groundwater. Those rights have been dealt with by the state engineer by authority independent of the decrees and have always been appealed to state courts. That's the first problem. The second problem... Has this question ever been presented in the sense of where the allegation is that the taking of groundwater interferes with the decreed right under federal law? I mean, I understand they've never done it, but has the question ever been presented? Not that in Nevada, no, not that I'm aware of, and I think that that speaks highly of the state engineer and their attempt to carefully manage these groundwater basins. I will say that Nevada is very forward leaning in the management of groundwater and restricts the amount that can be appropriated. So it has managed to avoid that problem. Second is it creates this very difficult situation with multiple court jurisdiction and the standard by which appeals are to be judged. And difficult in the context of this case, I think, are the factual realities here. We do not have any facts that indicate that these appropriations, and I'm speaking now on the Truckee River, that these appropriations will have any impact on any decreed rights, let alone the tribe's senior priority water rights. That was one of my questions to counsel, whether the allegation could potentially have... That's all it is, an argument of potential impact. But that's because the state engineer increased the amount of perennial water that would be available in the underground water system. Which is a factual finding. Was it 6,000, whatever? Yeah, I apologize, the number of it, he did increase that by, I believe, some 2,000 acre feet, if I recall, perhaps 3. If you increase that, that's basically everything that's well within... That's correct, and that's a finding of fact. And there we have the problem with appellate jurisdiction. On the one hand, you have a finder of fact whose findings are presumed to be correct, which are reviewed on a substantial evidence standard, in a court that is not authorized to take evidence or to re-weigh the evidence. And yet, in order to get to jurisdiction, that's exactly what will have to be done. There has to first be a finding that the state engineer made a mistake as to the perennial yield. There's going to have to be a finding as to the actual impacts. In this case, I don't think we even have to get that far because the most junior priority right on the river system is a state-permitted water right. We have to go a long way before we get to the tribes' rights, I understand. A very long way. And so I... That makes it almost impossible in this case to come up with a hypothetical that would really justify the federal court taking jurisdiction and, given the standards of review, would make that practically impossible to do without a trial de novo. Okay, now, we've... You started out with five, and we're up to 16 or 17 minutes because we've questioned you. Let's let your co-counsel or your associates representing other parties speak, and then we'll go from there. Good morning. May it please the Court. My name is Brent Colbett, and I represent the... what would probably be the real party in interest, the applicant whose water rights were granted by the state engineer and who have been challenged by the tribe in this case. And just to clarify, the state engineer took evidence on the issue of whether or not to up the perennial yield for this basin based on rainfall totals, all kinds of evidence respecting the perennial yield determination that he made, he increased it some. I mean, the application asked for a whole huge increase, and he reduced that down to... I think it was somewhere in the vicinity of 3,000 acre-feet additional, some of which or most of which my client got. But going back to the questions that have been asked here, I wanted to address a couple of them. One is that the state statutes, which are an issue when an applicant goes forward before the state engineer, requires that the state engineer make certain findings before he can grant those rights. And one of the very first of those is whether or not those rights which he's looking at granting would impact or affect existing water rights. That would include a decreed right as well as another underground right or another senior right of any type. And so in that sense, the state engineer is tasked by state law with looking at those issues. He'd have to look at whatever senior rights were out there, whether it be the underground or whatever. And that happens at every basin in the state of Nevada. When you have an application to appropriate water, you have to examine what other rights are out there. If there's a well next to you that's already been in existence, you cannot, under that law, grant... the state engineer cannot grant a right that would interfere with that. That's the same here. The second point is that these senior rights that are being put forward by the tribe here are decreed rights. They were created by a decree of the court. They're no more... They're no different because they were done that way than they would have been if they were in a state court adjudication. Well, they're different only in the sense of what court might have jurisdiction to decide whether the state engineer was right. As it affects those rights directly, would be my argument, the courts retain jurisdiction to administer the rights that he had adjudicated. If there are rights that were not in that adjudication, that court has no jurisdiction over those, would be my argument that state court would be the proper place. And I think Judge George correctly analyzed it when he said, you look at what is being applied for, and that determines your jurisdiction. In this case, they were state underground rights that were being applied for. State court should be the jurisdiction. Let me try this out on you. It seems to me that the only legitimate argument the tribe has for arguing that the federal district court, and then us, I guess, on appeal, ought to have jurisdiction here is that the state engineer has held that the amount of groundwater that may permissibly be taken out of the river will impact their decreed rights. And so long as the state engineer is right, that X amount of water can be taken out of the groundwater without affecting the senior rights of the tribe, well, federal court has nothing to say about it. So it doesn't, anything within that overall allocation that the state engineer says can be taken out of the groundwater, whether it goes to you, whether it goes to somebody else, the federal court has absolutely nothing to say about that. So it seems to me the only question that the federal court might have jurisdiction over is the overall number that the state engineer says may be taken out of the groundwater. Are you with me so far? I'm trying to follow all of that, yes. But what the tribe is really asking in this case is that they make the determination of which court they get to go to. It's sort of forum shopping for them. If they feel that... Well, lawyers forum shop. I understand. But the basis for that forum shopping has to be somewhere. And in this case, what they're saying is, because there may be some impact, they make an allegation and a complaint. They don't have to have any showing of that. In the case that we're talking about here, for example, just to explain to you what's going on out there, the wells that are being used to appropriate or will be used to appropriate this water are some 800 feet deep. They range from a half a mile to four miles from the river. They have different water chemistry. They get different water temperatures. One of the water temperatures is something like 90 degrees. The sources of that water getting into the river haven't been established. All we have are an allegation, really, and some supposition in testimony by an expert that it might. That stretch of the river, by the way, goes up and down. It gains in certain sections. It loses in certain sections. And at the end of the day, at the end of the gauging system, there's a certain amount of water that gets to the lake. But how it gets there, what mechanism it's using, where it all goes, nobody knows for sure. What the tribe is saying is that when the state engineer makes a determination based on the best available evidence before him and makes his reasoned and best call as to the fact that there's additional water available, that we can now, by an allegation, put that in federal court because we have a federal decree, a federal decree that only created certain rights. It did not... But they say more than that. They say it's going to affect the amount, our allocation under the decree. But there's no showing of that anywhere in the... Well, that's what Judge Fletcher's been trying to probe. What should they be required to show in order to be able to pursue their matter in federal court? And what I'm suggesting to you is that the state court process is the proper procedure. That will be... For no allegation. I mean, they could allege there's going to be a direct impact. We are not going to get the allocation under the decree. That's not good enough. They can never get into federal court. Because bear in mind, under the Newlands Act and the McCarran Act and every act that involves federal government and state water rights, they defer to the state being the law that is to govern. In this case, what happens is you have a state law which sets up a procedure for protecting senior water rights, sets up an appellate process when those senior water right holders feel that their rights are being affected. That same process applies to the tribe. If their water rights under Claims 1 and 2 are affected under the Ordage Decree in their view and the state engineer has taken jurisdiction of an underground water right application, they have a procedure under state law to protect their rights. They have the same appellate right that I would have as a water right holder in the state of Nevada. Do you agree with the state that the tribe could file a complaint, an original complaint alleging that the state is allocating groundwater rights in a manner that has a detrimental impact on their decreed rights? I'm not sure they could file an original complaint. I'm assuming that their jurisdiction would have to be under the decree and they'd have to file some procedure through the decree court to challenge that if they thought it was directly affected. But I think you'd still have to get beyond just filing something. You'd have to meet the criteria for an injunction in federal court which shows that you have a likelihood of success on the merits and that there's a likelihood that there's an impact. I said a complaint. Before they get any relief, of course, they would have to meet their... Exactly. They could do that if they felt strong enough in their belief, I suspect, but whether they've got the proof to sustain such a complaint is another issue. Would the federal court have jurisdiction to entertain that initial suit, that original suit? In a very, very limited circumstance, perhaps. But I think it would still go back to whatever the state engineer finding was. If the state engineer found... But that's a vestment on the merits. Well, in a water right application, there's going to be a merit determination by the state engineer. If he found that those particular... as he did in the Griffin case, that those water rights were going to impact the federally decreed right, he denied them. And based on that, you may argue that the federal decree court may have some jurisdiction in that. But in this case, he's found just the opposite, that these rights do not have any impact on decreed rights. Well, I think the engineer's... I won't say found because that implies fact. I think the state engineer has held, as a matter of law, that irrespective of whatever might be the influence on the flow in the Truckee River, groundwater allocations are entirely separate and I don't have to pay any attention to any possible effect on the decreed rights. But that's how I read the state engineer. I don't think he said that he doesn't have to pay any attention to effect on decreed rights. Well, I can guess what he's paraphrasing. In this case, there was no impact on those and, therefore, that was not an issue with his findings. If he found, as he did in Griffin, that there was an impact, he denied it. So he doesn't pay no attention. He pays attention to a senior right, whether it's decreed or another underground right sitting next to it or whatever the decree, I mean, the senior right is based on. That's what his charge is under state law and he's charged with enforcing it. The courts are there to back that up in the state system. The other part of it is you asked what kind of order you write. I think you write Judge George's order which says that you look... Very straight. I mean, that's an easy order. That's a very easy order to write. Okay. I would defer to that. Just to give you a hint as to what I'm intending to do here, I want to hear from the last lawyer that's going to be Mr. Robertson let you respond and then we'll take a recess and you can sort of regroup, think a little bit and we'll come back out and we'll hear the state engineer case. I have a feeling we're going to be talking about exactly the same thing. Okay. We'll try our way. Good morning, Your Honors. Excuse me, but please, the Court, David Robertson on behalf of Hospitality and Appalachia TRCC. The Court has asked some fascinating questions and I'd like to get right to them. Let's start with what we can all agree on as, I think, universal truth in this case. Number one... Now, let me understand based on the statement we have from the beginning, are you still in this case? I am, Your Honor. And, in fact, my presence is going to emphasize a particular point that I want to make. As indicated by the tribe, we're here on the same appeal, different water rights, but the same appeal, and it is undisputed as to my client's water rights that there is no hydrologic connection, that there is no way, it's not physically possible for the removal of the groundwater from my client's aquifer to impact the river. So, I stand before you as an example. But, I'm also asking, are you still in this case because, at least as I think I understood what I heard before, the tribe is saying, you know, we didn't contest and, therefore, any appeal with respect to you is not in front of us. Didn't I hear that or did I mishear? Well, if this court finds that the federal court has jurisdiction as to the applications of these other folks, you'll be impacted is your word. Well, then, somehow, the court is trying to exercise jurisdiction over my client's rights that have no connection to the river at all. And, that highlights part of the problem with this whole jurisdictional, excuse the statement, mess that I think we have here. So, I think mess is the right word. Okay. And, I think we can solve this in a way that protects the interest. I think we all agree that the decree court needs to be able to protect its decree and protect the water rights under the decree and has to have jurisdiction to do that. And, I think we all agree that that jurisdiction of the federal court trumps the state court's ability to try to impair the senior rights of the tribe or of any of the decreed water rights. So, how do we solve this problem? And, I believe that it's basically it's more simple than you might think. The tribe is not deprived of a forum here if the federal court, if you follow Judge Georgia's ruling. And, let me explain why.  has the obligation to not grant a groundwater application if the granting of that application will impair a right under the decree. So, he has to make that analysis initially. If he does, and here he did, and he said, none of these groundwater applications are going to impair either the Orgich or later the Alpine decree rights. Now, if the tribe disagrees with that, which they do, they have the right to appeal that to the state court under the state court statute. And, what happens at the state court level? The state court either says the state engineer was right there's no interference with any decreed rights, or the state court says the state engineer was wrong, there was interference with the rights of the decree. If the state court says the state engineer was wrong, then the state court is reversing the state engineer and these groundwater right applications are denied. No harm to the tribe. If the state court finds that the state engineer was right and that there was an impact, I'm sorry, and that there was no impact on the decreed rights, then there was never any jurisdiction in federal court to begin with. There was no jurisdiction, I'm sorry, you dropped your voice. There was never any jurisdiction in federal court to begin with in that case because the state court has found that the state engineer was correct. There was no interference with the decreed right. So, the tribe has a level of protection, excuse me, at the state engineer level. It has appeal right to the state court. It has an appeal right from that state court to the state supreme court and ultimately the appeal right to the U.S. Supreme Court from that. Protected by four levels of an appeal right which would be a social area right to the United States Supreme Court is an unrealistic right. That is to say, the Supreme Court is unlikely to get down into the detail of Nevada water rights. Just a guess. And that's fair unless there's some allegation of... I mean, some broad questions of policy, the Supreme Court does get into and indeed they have with respect to the Pyramid Lake but the detail of the particular case, they have no interest whatsoever. Okay. And then there's the fifth level of protection for the tribe which is to address Judge Piazza's point. What we're talking about here is an appeal of an application. This is all experts looking and saying what do we think will happen if this groundwater is appropriated. And they don't think it's going to affect the river. And that's their best estimate and that's what the state engineer determined in this case. But if you go through the process and the application is approved as the engineer and then confirmed by the state court and the appropriation begins, what happens if that appropriation in fact does? Now that we're in reality, we see that that appropriation is taking water out of the river. That's when the tribe absolutely has the right you're referring to, Judge Piazza, to go into the federal court or the alpine court and say, Judge George, we have proof that they are taking our senior water rights. Under your decree as a federal court judge, you have the ability to enjoin that and to stop it. And the federal court still is protected and can still do that. Okay. That's your solution. That's our solution. And finally, Your Honor, I just wanted to point out again that we have this problem that my client has no idea of the hydrologic connection at all. And it's not appropriate for the federal court to take jurisdiction of my particular client, which means if you affirm, we have no problem because we all go to state court. But if you reverse, then my client is going to have to proceed in state court. The other clients would proceed in federal court and we have, again, we're back to the mess. We have a horrible potential for it. Well, the mess may be mitigated to some degree if it goes to federal court because it seems to me that the only question that the federal court should be allowed to have jurisdiction over, even on the most optimistic assumption in favor of the tribe, is as to whether or not an overall allocation of water out of the basin will impact the senior rights or maybe a specific application will, but given how senior  in the river, those cases aren't going to be very, they're not going to come up very much. Right, but both, if my client has no idea and my client ends up in state court and the other client ends up in federal court, both courts will have to address this exact same question that you've raised, what's the overall allocation and was it appropriate to increase the perennial yield of the basin, and so you have the risk of inconsistent verdicts and you have I'm not sure you do, that is to say, the federal court may have jurisdiction over that question because the question is a fact on the decree rights and they've got jurisdiction. But my client has under NRS 533-450 has the right to appeal that determination to the state court as to the amount of the perennial yield as well. Okay, thank you. Thank you. I'd like to respond briefly, but given what I just said, you're going to be standing up again, so you don't have to say everything that's in your head now. I understand, Your Honor. Thank you. First of all, of course, Mr. Robertson's client got no water from the state engineer's ruling. He was shut out because the state engineer gave all the water he gave to TRI. So that is one of the reasons the tribe has nothing much to say about TRCC. They didn't get anything. So the fact that they may have, you know, a confined aquifer that doesn't contribute to the jurisdiction of   absolutely clear. The state engineer absolutely cannot confer or restrict federal jurisdiction. Mr. Robertson and I may agree on that, but I didn't hear that being so clear when we heard the comments from Mr. Colvett and Mr. Walz. I think that is absolutely crystal clear. Finally, it is not the state engineer's comment. I'm not going to take account of any harm to surface water and the federal court's refusal to take jurisdiction if the original application was for groundwater. That's why we're here. We might win or lose when we get down to the question of the facts and merits of the case, but we're here because those precedents are so broad and sweeping and we're here because we're not going to give up on the state engineer's decision. Is it for substantial evidence? On factual matters, yes. He just looks at the record? Correct. That's all he does? It's an appellate type review. We don't bring new evidence. Suppose he says, well, looks at the record and everything that was presented to the state water engineer and says, I find that the water engineer's determination regarding increasing the perennial yield is supported by substantial evidence. If he says that and if he says the state engineer... You guys don't belong in federal court because there's no way these allocations are going to affect your record. Then we're lost on the merits and I can live with that. What I can't live with is the I refuse to look at this record.   fact that the state engineer's determination is this increase in yearly allocation something that will impact adversely your client's and decreed rights. If you take both steps in your opinion, which is to say that the state engineer is applying the wrong legal principle when he says I take no account of harm to      no way that we can get that information in the first place. The next case is the I assume we're going to cover much of the same ground, so I doubt we need to take quite so much time. Why don't we start out with ten minutes for you first time around because we covered a fair amount so we'll treat that as an aspirational guideline. Thank you, your honor, and if I could have a couple of minutes for rebuttal. This combination of cases is important on this issue because it shows that both the state engineer and the federal district court have made this position not just a one-time deal but a two-time deal.   engineer has made this position. And I go first to the state engineer's decision on the Carson River in the Alpine Decree. And the interesting thing about his ruling there is that he makes clear he doesn't take issue factually or scientifically with there being a ground  right. He makes what I think is fair to call the legal conclusion that the ground water cannot belong to the river. That's found at page 44. So this is not just him saying you didn't prove that this hurts your rights or you didn't show the ground right. He is saying as a legal matter, ground water cannot be part of the decreed surface water rights. And that is wrong. Both as a matter of Nevada state law and federal law. And that is why we need this court to go both levels. If you could point me to the precise language on page 44 when you say cannot belong. I want to make sure I have the state engineer's language. That sounded a little bit like a paraphrase. Okay. That is found at about four lines down. The ground water does not belong to the river. The ground water was not included in the Alpine decree. So, that is the last page of the ruling where the signature stamp is four lines down. Let's see. Conclude. That is where all these gaps are coming from. That the ground water does not belong to the river.  the ground water does not belong to the river. This is the Carson river we are talking about. I think you are going with that point. First, I would like to say why the district court's order also shows that this court's intervention is needed. That is because the district court, kind of like the state engineer did here, goes even further by assuming, he says, I assume it is true that there is a hydrologic connection between the Dayton ground water and the Carson river. He says, I must look only at where the applications were made.    that and says, you can only go to the county state court where the ground water applications were made. He says, I must look only   applications were made. That is the locus of where those applications are to be found. Let me go with you for purposes of this question so far as concluding that the federal court has jurisdiction on an appeal from the state engineer's ruling to the extent that there is, and I'm now choosing a waffle word, a substantial ground to think that the allocation of groundwater will adversely affect the decreed rights. My understanding is that the tribe has no decreed rights under the Alpine decree. The only decreed rights are under Oreditch. Those are the two decreed rights under the Alpine decree. To the degree we are talking impact of potential allocation of water that might otherwise flow into the Carson River were one step removed. I'm not saying there can be no impact. We are one step removed. Any jurisdiction that the federal court might have is influence or adverse effect on the decree rights under the Oreditch decree. I just want to make sure I got that right. You do have that right. The harm is contingent in the case of the Carson River because the flow of the Carson River going into the Lahontan Reservoir satisfies the 1902 priority of the United States. That is true. There is no direct decree right on the Carson River. But the foundation for jurisdiction remains the decree rights under the Oreditch decree. So, the decree court, as we talked about in the first argument, has its inherent jurisdiction to protect its decree. And the misapprehension of the district court in the Carson River order has to do with this question of what county the groundwater appropriations are locust in. And that has nothing at all to do with the federal court's jurisdiction to protect the decreed rights. And to go back, I think, to the answer that addresses the   federal district court, where it said, the court's decree is not an idle ceremony which can be flouted without any expectation of enforcement. Here, this federal district court undertook jurisdiction to determine these rights, and it retains continuing and    these rights. It doesn't necessarily have to do it through an appeal. Three years later, after we know how the allocations have worked and what the perennial table is. That is procedurally possible, but I would argue much less than that. I would argue        district court is not an idle ceremony which can be flouted without any expectation of enforcement. The merits of this process will actually be altered because you are seeking an injunction where you have to balance the hardships. It is farther away, more expensive, and it automatically rebalances the relative equities which you are looking at in this case. It is much better to deal with it up front. Either it is right or wrong. It has to be modified. I'm trying to figure out how complicated the decision would be in front of the federal district court. Does it need to do anything other than decide whether the overall allocation of groundwater that the state engineer has increased in that small subsection of the Truckee Basin, whether that seriously threatens the senior rights? Does the district court have jurisdiction to decide anything other than that question? That is a relatively clean question. It may be hard on the facts, but it is a single question. I would suggest the test is does the action adversely affect the decreed surface water right? I'm trying to answer  question. Would this be a relatively infrequent interference by the federal court with what the state engineer is doing? For example, would it work when the state engineer increases the overall allocation of groundwater out of a particular basin from 2X to 2X? The tribe comes into federal court saying the allocation of groundwater to 2X so seriously threatens the decree rights that that can't be done. Or the federal court says I look at the evidence, there is substantial evidence to support what the engineer has done. Once the federal court has done that and allowed the engineer to increase the allocation to 2X, any further application for groundwater that comes under the 2X ceiling, there is no federal jurisdiction because the federal court has already said 2X is fine. If that's what the federal court said, that would be true. We might be able to have the federal court come in once when the allocation of overall groundwater is increased and every other application provided comes under the ceiling, there is no federal jurisdiction. Let me give you this extreme example that I say could happen because of the way both the state engineer and the federal court have phrased this. Applicant drills a well that goes down straight under the river and pumps the heck out of it. The state engineer says fine, groundwater has no, I don't have to take account of harm to surface water because it's groundwater. They pump the heck out of that well and the river disappears because it's getting sucked down into the well. State engineer says I don't care, I don't have to pay attention to this. We go to federal court, federal court says no, that's a groundwater application, I don't have to protect my surface rights. That's what I'm here about. So, I'll end on that note and come back for rebuttal. Thank you. Let's have as an aspiration ten minutes among the three of you. That's the aspiration. I'll try to just make a couple of points, your honor. The facts on the Carson River are substantially different and I think underscore the ambiguity that all of this creates. In that case we're not dealing with new appropriations or at least the vast majority of the applications addressed do not deal with new appropriations of water. There was a granting of just over 2.5 acre feet between two applications. The rest are change applications of existing water rights. The state engineer was required to determine whether the changes would conflict with existing rights or threaten to prove detrimental to the public interest. By definition when the state engineer makes that determination he's trying to make sure that the change will maintain the status quo, that no more water is going to be coming out of the system. Not on a particular  If I use numbers 10 acre feet and I consume seven acre feet and three return to the system in some manner, my new use cannot consume more than seven acre feet. There we built into the state engineer's finding is there's no injury. There's no additional injury but these are existing rights. There are a couple of critical facts here. One, many of these rights have priority dates senior to the tribes river state permitted right. In a fight between those two, those ground water rights. That's not part of the decree right. That as well. Absolutely. Factually we have two steps to get to before we can even start discussing the issue of jurisdiction. The tribe talks a great deal about hydrologic connection. The state engineer doesn't deny there can be hydrologic connection. Hydrologic connection is not the standard the state engineer reviews. It's injury. Which is why this entire discussion threatens to create a morass of jurisdictional confusion. There are a number of adjudicated state adjudicated systems.  a number of adjudicated stream systems that are tributary to the river. Under the discussions we are having today, change applications on those state adjudicated systems could be appealed to federal court because there is a hydrologic connection. It also creates a problem that a ground water system could be connected to more than one stream system that are adjudicated in different courts. And then we are left with a race to the courthouse. Let's have a surface water allocation question of tributary to the Carson River. The state engineer allows a change of use. Are you saying that that change of use to a tributary to the Carson River can be appealed to the federal district court? No. I'm saying it should not be. I'm saying that that is the result of the tribes argument today. I'm talking surface water. I'm not talking ground water. That is correct. I thought I heard you say the opposite. I'm saying that is the result of the tribes argument. I don't see the tribes arguing that the ground water connection should give a greater jurisdiction to the federal court. I don't see that argument at all. I don't know if it is greater but they will allege injury and it should be presumed. You are saying that simply because of a change of use application there is no possibility of jurisdiction. That is correct. I don't hear the tribe argument that there is jurisdiction or possibility of jurisdiction if it is ground water. That is the vast majority of the applications that have been presented. Those are easy. There is some new use here as well. 2.5 acre feet between two of the state  and the federal court. Even if we say the federal district court protects the decree rights by appeal from the state engineer it may well be that even if that is so the cases have  handled in a consistent manner. Too factually distant. I don't think it can be said that the state engineer has flouted rights here. That is incorrect. The state engineer has been handling ground water rights in a consistent manner for many years. Thank you. By agreement of counsel Mr. Robertson on behalf of Dayton Valley investors I'm going second this time because in this case my client's applications were granted. You are going second and there is a third? I'll be brief. First I would like to address your question judge Fletcher. Would the end of the discussion for the federal court be simply the question of did the state engineer properly raise the perennial yield? The answer is no. There is another issue. That was why I made a point in the prior case that my clients that did not receive the water had proven there was no hydrologic connection because we contended the people who did receive the water were taking it directly out of the river. The district court has to determine whether the wells granted are taking river water rather than ground water. If so, we contend those applications have to be denied and the water has to be taken directly out of the river. The other point I wanted to make is both of your honors have quoted in your opinions back in 2001 that water litigation is a weed that flowers in the arid west. That was my law clerk. I'm sorry. But Judge Perry picked up on it. His lawyer to him. His law clerk was a friend of my law clerk. I just like to respectfully suggest that allowing appeals of ground water determinations to come into federal court is going to heap a bunch of fertilizer on that problem because all we have in this case is the tribe making a general allegation that there could be this hydrologic connection. They didn't do any studies. There's no ground water application. The tribe in Dayton Valley is going to take water out of the river. That means in every case where there's a ground water application, the tribe can come in with the same generalized study and say generally we found there's a connection between ground water applications and surface water. It really is true that the tribe could come into federal court for every ground water application in a basin that has a stream that goes through it. It is not insignificant to think about the level of litigation you're going to see moving to the federal court from ground water. The suggestion I made earlier that the tribe rights are protected through the state court system and ultimately through the ability of the decree court to enforce this decree I believe provides all the due process protections that the tribe needs and gives the power to the federal  Thank you. May it please the court, Brent Pulvid on behalf of Stanton Park development. In this case we are well aware that the tribe rights were in existence at the        don't recall the exact date. I don't recall the exact date. I don't recall the exact date. I  recall the exact date. To argue that this has not been taken into account is part of that process. It is not simply true. The adjudication establishes the amount available at a source and divides it up. In this case, as the court has already noted, the tribe's claim in this appeal stems from its rights under one decree. They are now trying to say under the Alpine decree they have a standing to appear and contest the state engineers action under that decree. I think what they are saying is on the facts it seems to me a stretch but they are saying we have a right to protect our decreed rights and something happened under the Alpine decree that affects our rights. That is a long chain of reasoning. I would certainly agree with your honor but the other absurdity I didn't call it absurdity but the absurdity of that argument is that you could have the Yordish decree court arguing with the Alpine decree court over who is doing what on what particular stream system. What they have done in this case is try to mix the two systems and keep them separate at least. The state is still there and they argue that the state is not going to give them a fair shake but that is not true. Scary scenarios about drawing up a river, that is not what is happening here and it should not be considered unless you have any questions. If this state engineer said the same things about groundwater and surface water that the then state engineer who was presiding during the Griffin time said we probably wouldn't be here but part of the problem is the state engineer is not the same person and this one takes a different view as shown in his rulings in 5747, 5823 and in 5791 which is stayed in this court pending the outcome of the opinion here. Legal rulings are inconsistent with Nevada law. They could but the federal court is the primary place where the state  has the authority to make decisions. The fact that you have an attenuated chain of events doesn't affect the fact that the policy explained by the state engineer and the federal district court and talking about the conflict between the two courts is ridiculous because it's the state engineer and the federal district court. He's going to go back and fight with himself in chambers? No. What he does is takes the same position and expands on it when we get to the Carson River. Our point is the ninth case is about ground water effect on surface water rights. If that happens, you're not going to see this up here very often because the rules will be in place. Thank you, your honor. Thank goodness for good lawyers. Thank both sides for   Thank you.
judges: Hall, Fletcher W. , Paez